## LAWRENCE v. COMSTOCK.

CHATTEL MORTGAGE—ASSIGNMENT—CONSTRUCTION—PAROL EVIDENCE.

    The mortgagee in a chattel mortgage on "all lumber or building material" in or about a certain building assigned the mortgage, together with all her title to all "the lumber" in such mortgage mentioned; and the mortgagor, in the same instrument of assignment, assigned all his title to "said lumber." *Held*, that parol evidence was inadmissible to show the parties' intentions and their talk at the time of the assignment, to the effect that a quantity of rough boards of uniform length and selected widths, located in a dry kiln in the basement of the building, and designed for use for finishing purposes, should not be included in the assignment.

Error to Kent; Grove, J. Submitted April 10, 1900. Decided May 15, 1900.

Replevin by John S. Lawrence, trustee, against Daniel F. Comstock and Jennie M. Milner. From a judgment for plaintiff on verdict directed by the court, defendants bring error. Affirmed.

*Smedley & Corwin,* for appellants.

*Knappen & Kleinhans,* for appellee.

HOOKER, J.   Comstock, being indebted to Mrs. Milner in the sum of $7,000, gave to her a note therefor, secured by chattel mortgage on "all lumber or building material in or about the Comstock Block," etc.   Subsequently Mrs. Milner and Comstock made and delivered to Caldwell, as trustee for the benefit of the creditors and depositors of the Big Rapids National Bank, an assignment of—

"A certain chattel mortgage, and the note therein mentioned and secured thereby, executed by Daniel F. Comstock to me under date of October 30th, 1896, for $7,000, together with all of my right, title, and interest in and to all of the lumber in said mortgage mentioned.

"And I, Daniel F. Comstock, owner of the said property in said mortgage mentioned, for and in consideration of the sum of one dollar and other valuable considerations, to me in hand paid by the said George B. Caldwell, and for the purpose of securing and paying over to the creditors and depositors of and in said Big Rapids National Bank whatever may be found due them, do hereby sell, assign, transfer, and set over unto the said George B. Caldwell, as such trustee as aforesaid, all of said lumber, and all of my right, title, and interest in and to the same, hereby expressly authorizing and empowering the said George B. Caldwell, as trustee as aforesaid, to take immediate possession of said lumber, sell and dispose of the same for the best price and prices that can be obtained therefor, and from the proceeds arising therefrom to first deduct the costs and charges of such sale and handling of said lumber and converting same into money, and with the residue to pay and discharge in full or *pro rata,* as the case may be, the several claims as they shall hereafter be proven up of the creditors and depositors of said Big Rapids National Bank.

"Any provisions in said mortgage contained in conflict with any provisions herein inserted are hereby expressly waived; the purpose of this instrument being to convert said lumber into money as speedily as possible, and to apply the proceeds in the manner aforesaid towards the payment in full or *pro rata,* as the case may be, of the

claims of the creditors and depositors against the said Big Rapids National Bank."

Afterwards, by the decree of the circuit court of Kent county, Lawrence was substituted for Caldwell as trustee. At the time the mortgage was made, Comstock had in a dry kiln in the basement of said building a quantity of finishing lumber, cut to required lengths, designed for the completion of said building. This the defendants refused to deliver up to Lawrence, who demanded it under the assignment, and it was replevied in this action. The plaintiff claims that it passed under the assignment. The defendants assert that such was not the intention, and testimony was offered to show that the words "building material" were left out of the assignment for the reason, understood and talked about at the time, that the term "lumber" was not intended to include the building material mentioned. The court excluded this testimony, and, the plaintiff having recovered, the defendants have brought error.

The assignment seems to have had a double object, viz. : *First*, to assign Mrs. Milner's interest in the mortgage; *second,* to assign Mr. Comstock's equity of redemption in the whole or a portion of the property. There can be no question that the mortgage covered the lumber in controversy, because it covers both lumber and building material in the Comstock Block. We understand this to be conceded. It is equally clear that Mrs. Milner's assignment of the note and mortgage conveyed to Caldwell, and through him to Lawrence, all her interest in both lumber and building material. Therefore Lawrence had a right to foreclose the mortgage on both, and for that purpose might lawfully demand and take possession of it, at a proper time, for such purpose. The assignment of Mr. Comstock's interest gave a right to immediate possession of all covered by it, but is said to have limited the right to "such lumber;" meaning such lumber as was referred to in the assignment of the chattel mortgage.

Parol evidence may be resorted to for the purpose of identifying the subject-matter of a contract, but it must not contradict or vary the plain terms of the writing.   If this chattel mortgage plainly shows that the property in dispute, which can hardly be mentioned except by the use of the term "lumber,". was referred to by the term "lumber," the parties should not be permitted to contradict the writing by testifying that such was not the intent.   As well might it be said to be proper to show that a chattel mortgage covering all horses owned by the mortgagor was not intended to cover old horses, or young horses, or mares.   What force there is in defendants' contention arises from the use of the words "building material" in the mortgage; for it might be said that if the words "building material," as contradistinguished from the broad term "lumber," could only be applied to the lumber which had been selected and cut up into the requisite lengths for a specific purpose connected with the building, by reason of the fact of there being no other building material upon the premises, the use of the words "building material" would be superfluous unless they were designed to distinguish between this stuff and lumber in general.   But we cannot suppose that such was the design.   In the first place, it is not improbable that the term was used to cover other material besides lumber, such as lime, brick, sand, nails, lath, hair, and other supplies and articles designed for building.   If, however, there were no such articles, we cannot assume that the words were designed to make the distinction mentioned, because, as the mortgage clearly and unqualifiedly covers all lumber and all building material, there could be no useful purpose in such distinction.   Again, the words used in the mortgage are not "all lumber and all building material," but "all lumber or building material;" plainly indicating an intention to cover everything, whether it be called "lumber" or "building material."   When Mrs. Milner assigned her claims, she unqualifiedly assigned the mortgage, together with all her right, title, and interest in

and to *all* of the lumber therein mentioned. This cannot be said to cover only a portion of it, but all of it, of every kind, and Comstock assigned his interest in *said* lumber.

We think this contract clear and unequivocal, and that there is no latent ambiguity shown which calls for explanation. The testimony offered was that of the parties to show their intentions, and to show their talk at the time to the effect that this stuff was not to be included in the assignment, because it was needed to finish the building. Counsel offered to prove that the agreement was made that this should not be included in the assignment. This talk was merged in the writing, and was not admissible, because a plain contradiction of the writing. Counsel sought to show that lumber cut and partially prepared for use is not usually called "lumber." This was rough lumber. It was sawed the proper widths and lengths (viz., 14 feet) for certain work. We think the court properly held that rough boards 14 feet long, although selected or cut of certain widths, and put in the kiln to dry for a specific purpose, were included in the term "lumber," and that any testimony of a contrary intention was inconsistent with the writing and inadmissible.

The judgment is affirmed.

The other Justices concurred.